## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

AMANDA A. MARTELL,           )
51 Holly Lane                    )
Paola, KS 66071               )
                            )
and                        )
                            )
MARCY A. SEAMAN        )
1106 Valley Drive            )
Paola, KS 66071               )
                            )
              Plaintiffs,    )
                            )
v.                        )    Case No.:  2:22-cv-02335
                            )
LAKEMARY CENTER, INC.,     )
**Serve Registered Agent:**     )
      Kirk Davis             )
      Lakemary Center, Inc.    )
      100 Lakemary Drive     )
      Paola, KS 66071        )
                            )
and                        )
                            )
LAKEMARY CENTER HOMES, INC., )
**Serve Registered Agent:**     )
      William R. Craig       )
      671-675 N. Somerset Drive )
      Olathe, KS 66062      )
                            )
             Defendants.    )

## <u>COMPLAINT</u>

COMES NOW Plaintiffs Amanda A. Martell and Marcy A. Seaman, by and through counsel, and for their causes of action against Defendants Lakemary Center, Inc. and Lakemary Center Homes, Inc., for sex and/or disability discrimination and retaliation, FMLA interference

and retaliation, Kansas Public Policy (whistleblowing) retaliation, Tortious Interference with Contract, and Defamation, states and alleges as follows:

## PARTIES

1.    Plaintiff Amanda A. Martell is an individual residing at 51 Holly Lane in Paola, Kansas 66071 and she was employed by Defendants beginning on or around 2008 including in her final position as Vice President of Children's Services until her termination on or about July 1, 2021.  Plaintiff was born in 1971 and is presently 50 years old.

2.    Plaintiff Marcy A. Seaman is an individual residing at 1106 Valley Drive in Paola, Kansas 66071 and she was employed by Defendants beginning on or around 2012 including in her final positions as Principal of Lakemary School, part-time Director of Special Education, and a Member of the Executive Team of Lakemary Center until her termination on or about July 1, 2021.  Plaintiff was born in 1985 and is presently 37 years old.

3.    At all relevant times, Plaintiffs were "employees" of Defendants within the meaning of 29 U.S.C. § 630(f).

4.    Defendant Lakemary Center, Inc., a Kansas not for profit corporation, existing under the laws of the State of Kansas and doing business in the State of Kansas with a place of principle business of business located 100 Lakemary Drive, Paola, Kansas 66071.

5.    Defendant Lakemary Center Homes, Inc., a Kansas not for profit corporation, existing under the laws of the State of Kansas and doing business in the State of Kansas with a principal place of business located 100 Lakemary Drive, Paola, Kansas 66071.

6.    At all relevant times, Defendants were "employers" within the meaning of 29 U.S.C. § 630(b), in that they engaged in industry affecting commerce and have employed more

than twenty persons in each of twenty or more calendar weeks in the current or preceding calendar year.

7.      All the acts, conduct and omissions of Defendants were performed by their agents, representatives, and employees while in the course and scope of their agency or employment.

## JURISDICTION AND VENUE

8.      This Court has federal question jurisdiction over this matter pursuant to 28 U.S.C. § 1331, as the acts complained of involve violations of Plaintiffs' rights under federal law, specifically the, 29 U.S.C. § 621 et seq., Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq. ("Title VII"), and the Americans with Disabilities Act, As Amended, 42 U.S.C. §12101, et seq., ("ADAAA"), and the Family and Medical Leave Act, 29 U.S.C. § 2601 et seq. ("FMLA").

9.      This Court has supplemental federal jurisdiction pursuant to 28 U.S.C. § 1367 to resolve Plaintiff's claims arising under Kansas law and public policy as the facts are so related to Plaintiff's federal law claims as to be part of the same case or controversy.

10.     Venue is proper within this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events and omissions giving rise to Plaintiffs' claims occurred in the District including the unlawful employment practices set forth herein that are alleged to have been committed in this District by Defendants.

## FACTUAL ALLEGATIONS COMMON TO PLAINTIFFS MARTELL AND SEAMAN

11.     Plaintiffs were employed by Defendants, individually and/or jointly, until their wrongful termination on or about July 1, 2021.

12.     At all times herein mentioned, Plaintiffs were "employees" of Defendants within the meaning of Title VII, the ADAAA, and FMLA, and they are entitled to all the benefits and protections of those laws.

13.     Throughout their employment with Defendants, Plaintiffs were subject to the control of Defendants as to the means and manner of accomplishing their work as employees.

14.     Defendants individually and/or jointly were "employer(s)" of Plaintiffs within the meaning of Title VII, the ADAAA, and FMLA.

15.     Pleading in the alternative, Defendants operated collectively as a single integrated enterprise as the employer of Plaintiff.

16.     Defendants operate their businesses in a joint and integrated manner such that they effectively are joint employers or an integrated enterprise.

17.     On information and belief Defendants share management services such as check writing, personnel forms, policy manuals and filing of business reports with applicable state and federal agencies.

18.     On information and belief Defendants share payroll and insurance programs; they share the services of certain managers and personnel; they share office space, equipment and storage; they share certain officers and/or directors, and effectively they operate as a single unit.

19.     On information and belief Defendants have centralized control of labor relations in terms of centralized authority over labor and personnel policies, centralized legal management of labor and personnel issues, joint maintenance of personnel records and policies, and intra-organization transfers and promotions of personnel are common between and among Defendants.

20.     Defendants share common ownership and financial control in that they share certain officers and directors, and Defendants jointly control their finances, operations, policies, and procedures.

21.     In or around May 2021, Defendants' CEO, a female, got into a verbal altercation with a male member of Defendants' Board of Directors when she sought to promote Plaintiffs to Vice President positions.

22.     The CEO also complained about pervasive sex discrimination.

23.     The male Board member made disparaging remarks about Plaintiffs – that they are "not feminine enough", they are "bulldogs" and "bulldozers", and they are "too rough around the edges".  The male Board member further noted that the female CEO often complained about not being paid as much as her male predecessor.

24.     The female CEO escalated her complaints of sex discrimination to the Chairman of the Board.

25.     On or about June 1, 2021, the CEO was terminated after a vote of No Confidence by the Board of Directors.

26.     On June 4, 2021, Plaintiffs were placed on Administrative Leave without being given a reason.

27.     On July 1, 2021, Plaintiffs were terminated without being given a reason.

### PLAINTIFF AMANDA A. MARTELL

28.     Plaintiff Martell is a 50-year-old female, and she suffers from diagnosed medical conditions including stress and anxiety that qualify for protection as disabilities under the ADAAA.

29.     Plaintiff Martell was wrongfully terminated by Defendants on July 1, 2021.

5

30.     Throughout her almost 13 years of employment with Defendants, Plaintiff Martell performed all duties of her job as required, received good reviews and praise for her work.

31.     On or about April 13, 2021, Plaintiff Martell had knee surgery for which she took FMLA leave.

32.     The next day, on April 14, 2021, Defendants' CEO went to Plaintiff Martell's home while she was off on FMLA to recover.  Defendants' CEO wanted to work on a project even though Plaintiff Martell was on FMLA. Defendants' CEO said it was unacceptable for a member of the executive team to not be available at all times, even when taking FMLA or PTO.

33.     Plaintiff Martell reported the CEO's interference with her medical leave to Human Resources.

34.     In or around April 2021, Plaintiff reported to Defendants' Board of Directors concerns regarding the non-compliance of Defendants' children's dormitory facilities.

35.     Plaintiff Martell provided the Board with a list of items at the facilities that were out of compliance with state and federal regulations governing Psychiatric Residential Treatment Facilities.

36.     In late May 2021, Plaintiff Martell complained to Human Resources about gender discrimination and the disparaging comments made about her and Plaintiff Seaman.

37.     After Defendants' female CEO was terminated on June 1, 2021, Defendants' Human Resource Director indicated to Plaintiff Martell that she would be an excellent candidate for CEO.

38.     On June 1, 2021, after the termination of the female CEO, Plaintiff Martell was asked to meet with the new Interim CEO, Kirk Davis, and the "Second in Command"/CFO.

Plaintiff Martell was assured that her job and PTO were secure; however, she would not be serving in the role defined by the previous CEO.

39.     On or about June 4, 2021, Plaintiff Martell was placed on paid administrative leave for reasons unknown to her, and Defendants hired an outside investigator.

40.     On or about June 25, 2021, Plaintiff Martell met with Defendants' investigator for approximately eight hours, during which she was accused of many sexist, inflammatory, and untrue accusations that she denies.

41.     In late June 2021, Plaintiff Martell sought medical treatment due to work related stress.  She informed Defendants' Human Resource Director of her medical conditions and that she was requesting FMLA leave, which went unanswered.

42.     On July 1, 2021, Plaintiff Martell was wrongfully terminated, without any reason or notice.

43.     Defendants' retaliation of Plaintiff Martell continued even after her termination.

44.     On August 25, 2021, Plaintiff Martell received a phone call from the Kansas Department of Children and Families ("DCF") related to a report alleging a lack of supervision of a child. These allegations were determined unsubstantiated by DCF and were in retaliation for Plaintiff reporting her concerns of discriminatory and retaliatory conduct.

45.     On information and belief, Defendants' agents and/or officers made the call to the DCF.

46.     On information and belief, Defendants violated Plaintiff Martell's privacy rights by attempting to discuss Plaintiff's employment and medical information with her healthcare provider.

47.     Despite her medical conditions, Plaintiff Martell was able to perform the essential functions of her position with Defendants, either with or without reasonable accommodations.

48.     Prior to and including her wrongful termination, Plaintiff Martell experienced a hostile, discriminatory and retaliatory work environment including a pattern and practice of disparate treatment in the terms and conditions of her employment based on sex/gender, and/or disability, and/or Kansas Public Policy retaliation by the Defendants and its managers and employees including, but not limited to unfounded discipline and retaliation for engaging in protected activity against illegal discrimination.

49.     These adverse actions were taken without any legitimate reason and in violation of the law and less-qualified male, non-disabled, and/or employees who had not complained about or reported discrimination or retaliation were treated more favorably.

50.     Due to symptoms associated with generalized stress/anxiety, Plaintiff Martell had been prescribed anxiety medication due to the discriminatory treatment.

51.     The true reasons for the discriminatory and retaliatory employment actions of Defendants against Plaintiff Martell, including but not limited to those adverse actions set forth above, include a pattern and practice of disparate treatment in the terms and conditions of her employment based on sex/gender, and/or disability, and/or retaliation by the Defendants and its managers and employees including, but not limited to unfounded discipline, and retaliation for engaging in protected activity by complaining about the illegal discriminatory and retaliatory treatment she experienced.

52.     On September 17, 2021, Plaintiff Martell filed a timely charge alleging sex and disability discrimination, and retaliation and Kansas Public Policy violations against Defendants with the Equal Employment Opportunity Commission ("EEOC").  (Attached as **Exhibit A**.)

53.     On or about June 3, 2022, the EEOC mailed a Notice of Right to Sue to Plaintiff Martell.  (Attached as **Exhibit B.**)

54.     This case has been filed within 90 days after Plaintiff received the Notice of Right to Sue from the EEOC.

55.     Plaintiff has met all deadlines and has satisfied all administrative prerequisites to filing suit.

## PLAINTIFF MARCY A. SEAMAN

56.     Plaintiff Seaman was wrongfully terminated by Defendants on July 1, 2021.

57.     Plaintiff Seaman was employed by Defendants as Principal of Lakemary School, part-time Director of Special Education, and a Member of the Executive Team of Lakemary, and throughout her almost nine (9) years of employment, Seaman performed all duties of her job as required, received good reviews and praise for her work.

58.     Prior to her termination, Plaintiff Seaman had concerns for her safety and fear of retaliation in the terms and conditions of her employment due to her sex/gender, complaints of discrimination and violations of Kansas law and public policy, and she believed she was being treated differently than male employees.

59.     Plaintiff Seaman has witnessed male members of the Executive Team and Board members groping female employees and making inappropriate comments to females and about females within their earshot.

60.     Plaintiff Seaman made complaints regarding the Board of Directors, specifically three male members, for abusing their positional authority on the board, having conflicts of interest, and disparate treatment towards female employees including herself.

61.     Defendants' male executive team members' behaviors at Defendants functions were not investigated despite Plaintiff Seaman's complaints and complaints from other female employees.

62.     Defendants' female CEO, who presented to the Board of Directors her results after she proposed a restructure of the Lakemary facility, was given a vote of no confidence and was subsequently forced to resign.  A male replaced the female CEO.

63.     In late May 2021, Plaintiff Seaman complained to Human Resources about gender discrimination and the disparaging comments made about her and Plaintiff Martell.

64.     On June 1, 2021, after the termination of the female CEO, Plaintiff Seaman was asked to meet with the new Interim CEO Kirk Davis, and the CFO.  Plaintiff Seaman was assured that her job and PTO were secure; however, she would not be serving in the role defined by the previous CEO.

65.     At the June 1, 2021, meeting both the Interim CEO and CFO detailed Plaintiff Seaman's excellence in work, commitment to Lakemary, and her effectiveness on the Executive Team. In the meeting, Plaintiff Seaman informed both the CEO and CFO that she would be back in the office on June 4, 2021, after her scheduled PTO.

66.     On June 4, 2021, Plaintiff Seaman was called to the Human Resources Director's office and was placed on paid administrative leave with no reasons given to Plaintiff.

67.     Prior to Plaintiff Seaman being placed on administrative leave, she had agreed to end her job with USD #368 as of July 1, 2021, when she would become the full-time Director of Special Education for Defendants.

68.     Plaintiff Seaman resigned her position at Paola Unified School District #368 in anticipation of and in reliance of completing her move to Lakemary Center, where her years of

service would be "grandfathered" in to Lakemary Center and she would receive all her accrued PTO and medical leave.

69.     Plaintiff Seaman contacted the Superintendent at USD #368 to inform him that she was placed on administrative leave since she was still an employee of USD #368 until June 30, 2021.  The Superintendent had no information regarding the leave or reasoning.

70.     The Superintendent at USD #368 contacted the Interim CEO and CFO requesting a meeting but was not granted a meeting until the following week.  He also wrote a letter to Defendants regarding Plaintiff Seaman's employment and that he was unaware of the Interim CEO and Board of Director's reasoning for Plaintiff Seaman's administrative leave.

71.     Defendants hired an outside investigator who contacted Plaintiff Seaman on or about June 24, 2021, requesting a meeting on behalf of Defendants' Board of Directors to discuss concerns that had been raised.

72.     On or about June 25, 2021, Plaintiff Seaman met with Defendants' investigator for approximately four hours.  Plaintiff Seaman was interrogated regarding sexist, inflammatory, and false accusations against her.

73.     After being placed on administrative leave, Plaintiff Seaman reached out to Human Resources Director and the Board of Directors regarding her transition to Director of Special Education for Defendants but did not hear back from Defendants.

74.     On July 1, 2021, Defendants' Human Resources Director informed Plaintiff Seaman that Defendants' Board of Directors decided to not proceed with its previous offer to work at Lakemary Center without any information being provided.

75.     Defendants further retaliated against Plaintiff Seaman by interfering in her employment contract with the Paola Unified School District #368 as Principal of Lakemary School.

76.     Defendants' retaliation of Plaintiff Seaman continued even after her termination in the form of false, defamatory allegations spread throughout the community.

77.     Prior to and including her wrongful termination, Plaintiff Seaman experienced a hostile, discriminatory and retaliatory work environment including a pattern and practice of disparate treatment in the terms and conditions of her employment based on sex/gender and/or Kansas Public Policy retaliation by the Defendants and its managers and employees including, but not limited to unfounded discipline and retaliation for engaging in protected activity against illegal discrimination.

78.     These adverse actions were taken without any legitimate reason and in violation of the law and less-qualified male employees who had not complained about or reported discrimination or retaliation were treated more favorably.

79.     The true reasons for the discriminatory and retaliatory employment actions of Defendants against Plaintiff Seaman, including but not limited to those adverse actions set forth above, include a pattern and practice of disparate treatment in the terms and conditions of her employment based on sex/gender, and/or retaliation by the Defendants and its managers and employees including, but not limited to unfounded discipline, and retaliation for engaging in protected activity by complaining about the illegal discriminatory and retaliatory treatment she experienced.

80.     On September 17, 2021, Plaintiff Seaman filed a timely charge alleging sex and disability discrimination, and retaliation and Kansas Public Policy violations against Defendants with the Equal Employment Opportunity Commission ("EEOC").  (Attached as **Exhibit C**.)

81.     On or about June 3, 2022, the EEOC mailed a Notice of Right to Sue to Plaintiff. (Attached as **Exhibit D.**)

82.     This case has been filed within 90 days after Plaintiff Seaman received the Notice of Right to Sue from the EEOC.

83.     Plaintiff Seaman has met all deadlines and has satisfied all administrative prerequisites to filing suit.

**COUNT I – SEX DISCRIMINATION (TITLE VII)**
**Plaintiffs Martell and Seaman against Defendants**

84.     Plaintiffs incorporate by reference the allegations of paragraphs 1 through 83 above.

85.     Plaintiffs' sex was a motivating factor in the Defendants intentional decision to discriminate against them in the terms and conditions of their employment, including but not limited to subjecting them to adverse job actions including a hostile work environment, discriminatory comments, and actions, false performance criticisms, and by their termination of Plaintiff for false, pre-textual reasons.

86.     The Defendants have a pattern and practice of sex discrimination, including as set forth herein, against Plaintiffs and similarly situated female employees.

87.     The discriminatory actions of the Defendants detrimentally affected Plaintiffs in the terms and conditions of their employment with the Defendants.

88.     Plaintiffs complained about these discriminatory actions to Defendants' management and demanded that the discrimination cease.

89.     Defendants knew, or should have known, of the sex discrimination against their employees, including Plaintiffs.

90.     Defendants failed to take prompt and appropriate corrective action to end the sex discrimination against their employees, including Plaintiffs.

91.     Defendants failed to make good faith efforts to enforce their policies to prevent sex discrimination against their employees, including Plaintiffs.

92.     Defendants' conduct was outrageous as it maliciously or recklessly violated Plaintiff's rights under Title VII, and is sufficiently culpable to warrant an award of punitive damages.

93.     As a direct result of Defendants' illegal and retaliatory actions, Plaintiffs have sustained damages in the form of lost wages and benefits, emotional pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, harm to their reputation, and other nonpecuniary losses.

WHEREFORE, Plaintiffs Martell and Seaman pray for judgment in their favor and against Defendants, jointly and severally, on Count I, and requests an award of actual damages, including but not limited to lost wages and benefits, with interest through the date of trial, damages for emotional pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, harm to reputation, and other nonpecuniary losses, damages for future loss of wages and benefits, punitive damages, all costs including reasonable attorneys' fees, equitable relief as appropriate, including but not limited to reinstatement, and any such other relief as the Court deems just and proper.

### COUNT II – RETALIATION (TITLE VII)
### Plaintiffs Martell and Seaman against Defendants

94.     Plaintiffs incorporate by reference the allegations of paragraphs 1 through 93

above.

95.     Plaintiff had a good faith, reasonable belief that Defendants were engaging in unlawful employment practices by subjecting them to sex biased comments, and adverse job actions including a discriminatory and hostile work environment, false performance criticisms and targeting them for termination for false, pre-textural reasons, including violations of laws prohibiting sex discrimination, and they reported their concerns and opposition to these unlawful practices to Defendants.

96.     The Defendants retaliated against Plaintiffs because of their opposition to unlawful employment practices including by subjecting them to false performance criticisms and terminated them employment for false, pre-textual reasons.

97.     Furthermore, following Plaintiffs' terminations, Defendants continued to retaliate against them by making false allegations to the DFC about Plaintiff Martell and by making false, defamatory allegations against Plaintiffs Martell and Seaman.

98.     Plaintiffs' opposition to the Defendants' unlawful employment practices was a motivating factor in the Defendants' decision to retaliate against them in the terms and conditions of their employment and their continued retaliation against them following their terminations.

99.     Defendants' conduct was willful and/or outrageous as it intentionally and knowingly violated Plaintiffs' rights under Title VII, and is sufficient therefore to warrant an award of punitive damages.

100.     As a direct result of Defendants' illegal and retaliatory actions, Plaintiffs have sustained damages in the form of lost wages and benefits, emotional pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, harm to their reputations, and other

nonpecuniary losses.

WHEREFORE, Plaintiffs Martell and Seaman pray for judgment in their favor and against the Defendants, jointly and severally, on Count II, and requests an award of actual damages, including but not limited to lost wages and benefits, with interest through the date of trial, damages for emotional pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, harm to reputation, and other nonpecuniary losses, damages for future loss of wages and benefits, punitive damages, all costs including reasonable attorneys' fees, equitable relief as appropriate, including but not limited to reinstatement, and any such other relief as the Court deems just and proper.

**COUNT III – KANSAS PUBLIC POLICY (WHISTLE-BLOWING)**
**Plaintiff Martell Against Defendants**

101.    Plaintiff Martell incorporates by reference the allegations of paragraphs 1 through 100 above.

102.    During the course of her employment with Defendants, Plaintiff Martell learned that Defendants' children's dormitory facilities were in violation of state and federal laws, regulations, and/or codes, including 42 C.F.R. Part 441 Subparts  D and G Kansas Department for Aging and Disability Services regulations as outlined in the Psychiatric Residential Treatment Facility Service Standards Manual, and the ADAAA, and she reported her concerns to Defendants' management, the Board of Directors, the Building Committee, and Human Resources.  Plaintiff's reports of noncompliance include but are not limited to:

    a.    42 C.F.R. § 441.301(a)(4).
    b.    42 C.F.R. § 483.364;
    c.    42 U.S.C. 12101, Pub. L. No. 206.2.3;
    d.    Kan. Admin. Regs. § 26-39-101.

103.    Defendants were aware of Plaintiff's reports of serious violations of rules, regulations and/or the law pertaining to the public health, safety, and general welfare prior to subjecting her to unwarranted retaliation and terminating her employment for pretextual reasons.

104.    Defendant retaliated against Plaintiff in the terms and conditions of her employment because of her reports of serious violations of law and public policy pertaining to public health, safety, and the general welfare, including but not limited to, by terminating Plaintiff's employment for false reasons.

105.    Furthermore, following Plaintiff Martell's termination, Defendants, through their agents and/or officers, continued to retaliate against her by making false allegations to the DFC about Plaintiff Martell and by making false, defamatory allegations against Plaintiff Martell.

106.    As a direct and proximate result of Defendants' illegal retaliatory actions, Plaintiff has sustained damages in the form of lost wages and benefits, emotional pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, harm to their reputation, loss of self-esteem, humiliation, and other nonpecuniary losses.

107.    Defendants' conduct was willful, wanton, and malicious, and showed complete indifference to or conscious disregard of the rights of Plaintiff, thus justifying an award of punitive damages in an amount sufficient to punish Defendants and to deter Defendants from like conduct in the future.

WHEREFORE, Plaintiff Martell prays for judgment in her favor and against the Defendants, jointly and severally, on Count III, and requests an award of actual damages, including but not limited to lost wages and benefits, with interest through the date of trial, damages for emotional pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, harm to reputation, and other nonpecuniary losses, damages for future loss of wages and

benefits, punitive damages, all costs including reasonable attorneys' fees, equitable relief as appropriate, including but not limited to reinstatement, and any such other relief as the Court deems just and proper.

**COUNT IV – DISABILITY DISCRIMINATION**
**Plaintiff Martell Against Defendants**

108.    Plaintiff Martell incorporates by reference the allegations of paragraphs 1 through 107 above.

109.    The Defendants intentionally discriminated against Plaintiff Martell on the basis of her disability, her record of disability, or because they regarded her as disabled in the terms and conditions of her employment, including but not limited to, by subjecting her to disability biased comments and actions, and including but not limited to, by subjecting her to adverse job actions including a discriminatory and hostile work environment, false performance criticisms, and by their termination of Plaintiff for false pre-textual reasons.

110.    At all times relevant to this action, Plaintiff was a qualified individual with a disability within the meaning of that term as utilized in the ADAAA, either as an individual with work related stress/anxiety and the associated symptoms with this disorder that qualify for protection as disabilities under the ADAAA, and who can perform all of the essential functions of her job with or without accommodations, or because she has a record of such an impairment, or because Defendants regarded her as having such an impairment.

111.    The Defendants discriminated against Plaintiff on the basis of her disability by (a) not making reasonable accommodations to the known limitations of an otherwise qualified individual with a disability; (b) forcing the termination of an employee who is an otherwise qualified individual with a disability; (c) subjecting a qualified individual with a disability to different terms, conditions and privileges of employment than the terms and conditions and

privileges available to non-disabled employees; and (d) refusing to accommodate and otherwise interfering with an individual in her exercise of rights under federal law prohibiting discrimination on the basis of a qualified disability, thereby violating the ADAAA.

112.   Defendants' illegal treatment of Plaintiff as set forth above and herein was motivated by an actual or perceived impairment related to actual or potential generalized symptoms of anxiety, a condition requiring medical treatment.

113.   Plaintiff was able to perform the essential functions of her positions with Defendants throughout her employment and at the time of her termination, either with or without reasonable accommodations.

114.   Defendants' beliefs regarding Plaintiff's actual or potential generalized symptoms of stress/anxiety requiring medical treatment was a motivating factor in Defendants' adverse treatment of Plaintiff as set for above and herein, including Defendants' decision to terminate her employment.

115.   Defendants were aware of Plaintiff's medical impairments.

116.   Defendants failed to take prompt and appropriate corrective action to end the discrimination against Plaintiff.

117.   Defendants failed to make good faith efforts to enforce their policies to provide any reasonable accommodations to address Plaintiff's medical impairments, assuming such impairments qualify as disabilities under the ADAAA.

118.   As a direct result of Defendants' illegal and retaliatory actions, Plaintiff has sustained damages in the form of lost wages and benefits, emotional pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, harm to her reputation, and other nonpecuniary losses.

119. The Defendants' conduct was willful, wanton and malicious, and showed complete indifference to or conscious disregard of the rights of Plaintiff, thus justifying an award of punitive damages in an amount sufficient to punish the Defendants and to deter the Defendants from like conduct in the future.

WHEREFORE, Plaintiff Martell prays for judgment in her favor and against the Defendants, jointly and severally, on Count IV, and requests an award of her actual damages, including but not limited to her lost wages and benefits, with interest through the date of trial, damages for emotional pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, harm to reputation, and other nonpecuniary losses, damages for future loss of wages and benefits, punitive damages, all costs including reasonable attorneys' fees, equitable relief as appropriate, including but not limited to reinstatement, and any such other relief as the Court deems just and proper.

### COUNT V – RETALIATION (UNDER ADAAA)
### Plaintiff Martell Against Defendants

120. Plaintiff Martell incorporates by reference the allegations of paragraphs 1 through 119 above.

121. Plaintiff had a good faith, reasonable belief that Defendants were engaging in unlawful employment practices that are prohibited under the ADAAA, including disparate treatment by Defendants in the terms and conditions of her employment compared with similarly situated, non-disabled employees, and she reported her opposition to these unlawful practices to the Defendants and advised Defendants of her disabling condition and need for accommodations as set forth herein.

122. Defendants retaliated against Plaintiff in the terms and conditions of her employment because of her opposition to unlawful employment practices and/or because of her

protected actions in requesting reasonable accommodations for a qualified disability, including, but not limited to, disability biased comments and actions, and by subjecting her to adverse job actions including a discriminatory and hostile work environment, false performance criticisms, and by their termination of Plaintiff for false pre-textual reasons.

123.   Furthermore, following Plaintiff Martell's termination, Defendants continued to retaliate against her by making false allegations to the DFC about Plaintiff Martell and by making false, defamatory allegations against Plaintiff Martell.

124.   Plaintiff's opposition to the Defendants' unlawful employment practices, and/or requests for accommodation, were motivating factors in the Defendants' decision to retaliate against her in the terms and conditions of her employment and their continued retaliation following her termination.

125.   As a direct result of Defendants' illegal and retaliatory actions, Plaintiff has sustained damages in the form of lost wages and benefits, emotional pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, harm to her reputation, and other nonpecuniary losses.

126.   Defendants failed to make good faith efforts to enforce policies to prevent discrimination and retaliation against their employees, including Plaintiff.

127.   Defendants' retaliatory conduct was willful, wanton and malicious, and showed complete indifference to or conscious disregard of the rights of Plaintiff under the ADAAA, thus justifying an award of punitive damages in an amount sufficient to punish the Defendants and to deter them from like conduct in the future.

WHEREFORE, Plaintiff Martell prays for judgment in her favor and against the Defendants, jointly and severally, on Count V, and requests an award of her actual damages,

including but not limited to her lost wages and benefits, with interest through the date of trial, damages for emotional pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, harm to reputation, and other nonpecuniary losses, damages for future loss of wages and benefits, punitive damages, all costs including reasonable attorneys' fees, equitable relief as appropriate, including but not limited to reinstatement, and any such other relief as the Court deems just and proper.

## COUNT VI – INTERFERENCE WITH FMLA RIGHTS
### Plaintiff Martell Against Defendants

128.    Plaintiff Martell incorporates by reference the allegations of paragraphs 1 through 127 above.

129.    Plaintiff engaged in a protected activity by notifying Defendants of her qualifying conditions and/or requesting Defendants provide her medical leave under the Family Medical Leave Act for her serious medical conditions including stress and anxiety and the associated symptoms with these disorders.

130.    Plaintiff in good faith attempted to exercise her rights with Defendants under the FMLA due to her own health conditions.

131.    Defendants interfered with Plaintiff's FMLA leave and her request for the use of FMLA leave time or rights, including but not limited to, demanding she work during FMLA leave, by discouraging, denying or limiting her medical leave, by subjecting her to hostile and biased comments, actions, and working environment, and including but not limited to, by subjecting her to adverse job actions including false performance criticisms, and by their termination of Plaintiff for false, pre-textual reasons.

132.    Plaintiff's exercise of rights under the FMLA was a motivating factor in Defendants' decision to subject her to the adverse job actions set forth herein, including but not limited to the termination of Plaintiff's employment.

133.    Defendants' actions were willful, outrageous and done with reckless indifference to Plaintiff's rights under the FMLA.

134.    Defendants failed to make good faith efforts to enforce their policies to provide FMLA rights and benefits to their employees, including Plaintiff, and to prevent against interference with employees' legal rights under the FMLA, including the rights of Plaintiff.

135.    As a direct and proximate result of Defendants' illegal actions, Plaintiff has sustained damages in the form of lost wages and benefits, emotional pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, harm to her reputation, and other nonpecuniary losses.

WHEREFORE, Plaintiff Martell prays for judgment in her favor and against Defendants, jointly and severally, on Count VI, and requests an award of her actual damages, including but not limited to her lost wages and benefits and other monetary damages, with interest, through the date of trial, damages for emotional pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, harm to reputation, and other nonpecuniary losses, damages for future loss of wages and benefits, liquidated damages, all costs including reasonable attorneys' fees, equitable relief as appropriate, including but not limited to reinstatement, and any such other relief as the Court deems just and proper.

## COUNT VII – FMLA RETALIATION
### Plaintiff Martell Against Defendants

136.    Plaintiff Martell incorporates by reference the allegations of paragraphs 1 through 135 above.

137.     Plaintiff engaged in a protected activity by notifying Defendants of her qualifying conditions and/or requesting Defendants provide her medical leave under the Family Medical Leave Act for her serious medical conditions including stress and anxiety and the associated symptoms with these disorders.

138.     Plaintiff in good faith attempted to exercise her rights with Defendants under the FMLA due to her own health conditions.

139.     Defendants retaliated against Plaintiff in the terms and conditions of her employment because of her requests to utilize FMLA leave time, including but not limited to, discouraging, denying or limiting her medical leave, by subjecting her to hostile and biased comments, actions, and working environment, and including but not limited to, by subjecting her to adverse job actions including false performance criticisms, and by their termination of Plaintiff for false, pre-textual reasons.

140.     Furthermore, following Plaintiff Martell's termination, Defendants continued to retaliate against her by making false allegations to the DFC about Plaintiff Martell and by making false, defamatory allegations against Plaintiff Martell.

141.     Plaintiff's exercise of rights under the FMLA was a motivating factor in Defendants' decision to subject her to the adverse job actions set forth herein, including but not limited to the termination of Plaintiff's employment and their continued retaliation following her termination.

142.     Defendants' actions were willful, outrageous and done with reckless indifference to Plaintiff's rights under the FMLA.

143. Defendants failed to make good faith efforts to enforce policies to prevent retaliation against employees or interference with employees' legal rights under the FMLA, including the rights of Plaintiff.

144. As a direct and proximate result of Defendants' illegal and retaliatory actions, Plaintiff has sustained damages in the form of lost wages and benefits, emotional pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, harm to her reputation, and other nonpecuniary losses.

WHEREFORE, Plaintiff Martell prays for judgment in her favor and against Defendants, jointly and severally, on Count VII, and requests an award of her actual damages, including but not limited to her lost wages and benefits and other monetary damages, with interest, through the date of trial, damages for emotional pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, harm to reputation, and other nonpecuniary losses, damages for future loss of wages and benefits, liquidated damages, all costs including reasonable attorneys' fees, equitable relief as appropriate, including but not limited to reinstatement, and any such other relief as the Court deems just and proper.

## COUNT VIII –TORTIOUS INTERERENCE WITH CONTRACT
### Plaintiffs Seaman and Martell Against Defendants

145. Plaintiffs incorporate by reference the allegations of paragraphs 1 through 144 above.

146. Defendants' retaliation of Plaintiffs continued after their termination.

147. On June 4, 2021, Plaintiff Seaman was called to the Human Resources Director's office and was placed on paid administrative leave with no reasons given to Plaintiff.

148.    The retaliatory and discriminatory administrative leave forbid Plaintiff Seaman from being on Defendants' premises or having contact with Defendants' staff or students' parents.

149.    Plaintiff Seaman contacted the Superintendent at USD #368 to inform him that she was placed administrative leave since she was still an employee of USD #368 until June 30, 2021.  The Superintendent had no information regarding the leave or reasoning.

150.    The Superintendent at USD #368 responded to Plaintiff Seaman to inform her that even though USD #368 did not place Plaintiff on administrative leave, it made it impossible for her to conduct her duties as Lakemary Principal as required in her contract with USD #368.

151.    Prior to Plaintiff being placed on administrative leave, she had agreed to end her job with USD #368 as of July 1, 2021, where she would become the full-time Director of Special Education for Defendants.

152.    Plaintiff resigned her position at Paola Unified School District #368 in anticipation of and in reliance of completing her move to Director of Special Education for Lakemary Center, where she would be grandfathered in and would receive all her PTO and medical leave.

153.    Defendants interfered in Plaintiff Seaman's employment contract with the Paola Unified School District #368 as Principal of Lakemary School.

154.    Furthermore, Defendants, through their agents and officers, reported to the Kansas Division of Children and Families (DCF) false statements about Plaintiff Martell.

155.    Plaintiff first learned of these false allegations made to the DCF on or about August 25, 2021 when a DCF employee called her to investigate the allegations.

156.    On information and belief, the investigation into the complaint spread the false information in the community and interfered with Plaintiff's ability to secure gainful employment.

157.    The spread of false information has resulted in the need for Plaintiff Martell to seek treatment for her emotional and mental health, and it is impeding Plaintiff Martell's prospects for gainful employment.

158.    Furthermore, Defendants, through its agents and officers, spread false information on multiple occasions about both Plaintiffs Martell and Seaman accusing them of embezzlement and indicating they were going to jail for embezzlement while employed with Defendants.

159.    Plaintiffs were unaware of the false embezzlement and jail allegations until members of the community inquired about them in or around the Fall of 2021.

160.    The spread of false embezzlement allegations throughout the community interfered with Plaintiffs' ability to realize expected employment opportunities.

161.    Plaintiffs had an actual contract and/or the expectancy of contractual relationships in the form of employment with the probability of future economic benefit to the Plaintiffs.

162.    Defendants knew or had constructive knowledge of the actual contracts and/or the expectancy of Plaintiffs' employment with other local employers.

163.    Except for the conduct of the Defendants, Plaintiffs were reasonably certain to have realized the expectancy of employment with other local employers.

164.    The misconduct of the Defendants was unjustified, intentional, and done with malice or ill-will.

165.    As a direct and proximate result of Defendants' illegal conduct, Plaintiffs have sustained damages in the form of lost wages and benefits, emotional pain and suffering,

inconvenience, mental anguish, loss of enjoyment of life, harm to her reputation, loss of self-esteem, humiliation, and other nonpecuniary losses.

166.   Defendants' conduct was willful, wanton, and malicious, and showed complete indifference to or conscious disregard of the rights of Plaintiffs, thus justifying an award of punitive damages in an amount sufficient to punish Defendants and to deter Defendants from like conduct in the future.

WHEREFORE, Plaintiffs pray for judgment in her favor and against the Defendants, jointly and severally, on Count VIII, and request an award of their actual damages, including but not limited to her lost wages and benefits, with interest through the date of trial, damages for emotional pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, harm to reputation, and other nonpecuniary losses, damages for future loss of wages and benefits, punitive damages, all costs including reasonable attorneys' fees, equitable relief as appropriate, including but not limited to reinstatement, and any such other relief as the Court deems just and proper.

## COUNT IX – DEFAMATION (SLANDER)
### Plaintiffs Martell and Seaman Against Defendants

167.   Plaintiffs incorporate by reference the allegations of paragraphs 1 through 166 above.

168.   Furthermore, Defendants, through its agents and officers, spread false information on multiple occasions about both Plaintiffs Martell and Seaman accusing them of embezzlement and indicating they were going to jail for embezzlement while employed with Defendants.

169.   Plaintiffs were unaware of the false embezzlement and jail allegations until members of the community inquired about them in or around the Fall of 2021.

170.    Defendants' false allegations tend to expose Plaintiffs to public hatred, contempt, or ridicule, and they deprived Plaintiffs of public confidence and social acceptance.

171.    Defendants' false allegations harmed Plaintiffs Martell's and Seaman's reputations.

172.    The spread of false embezzlement allegations throughout the community interfered with Plaintiffs' ability to realize expected employment opportunities and caused them emotional distress.

173.    Defendants' actions were not made in good faith, without an interest to be upheld, and its communication was made to improper parties.

174.    Defendants' actions were willful, outrageous and done with actual malice.

175.    As a direct and proximate result of Defendants' illegal and retaliatory actions, Plaintiffs have sustained damages in the form of lost wages and benefits, emotional pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, harm to their reputation, and other nonpecuniary losses.

WHEREFORE, Plaintiffs pray for judgment in her favor and against Defendants, jointly and severally, on Count IX, and requests an award of their actual damages, including but not limited to their lost wages and benefits and other monetary damages, with interest, through the date of trial, damages for emotional pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, harm to reputation, and other nonpecuniary losses, damages for future loss of wages and benefits, punitive damages, all costs including reasonable attorneys' fees, equitable relief as appropriate, including but not limited to reinstatement, and any such other relief as the Court deems just and proper.

## DESIGNATION OF PLACE OF TRIAL

Plaintiffs designate Kansas City, Kansas as the trial site for this case.

## DEMAND FOR JURY TRIAL

Plaintiffs demand a trial by jury on all issues so triable.

Respectfully submitted,

**SIRO SMITH DICKSON PC**

By  /s/ Athena M. Dickson
      Rik N. Siro          KS FED #77812
      Eric W. Smith      KS #16539
      Athena M. Dickson    KS #21533
      Raymond A. Dake    KS FED #78448
      Ryan P. McEnaney    KS FED #78827
      Amy R. Jackson     KS #28169
      1621 Baltimore Avenue
      Kansas City, Missouri  64108
      816.471.4881 (Tel)
      816.471.4883 (Fax)
      rsiro@sirosmithdickson.com (email)
      esmith@sirosmithdickson.com (email)
      adickson@sirosmithdickson.com (email)
      rdake@sirosmithdickson.com (email)
      rmcenaney@sirosmithdickson.com (email)
      ajackson@sirosmithdickson.com (email)

**ATTORNEYS FOR PLAINTIFF**